UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCO ANTONIO GARCIA,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
    _____/

File No. 1:09-CV-344

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter comes before the Court on Movant Marco Antonio Garcia's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court. For the reasons that follow, the motion will be denied.

### I.

On December 7, 1994, Movant was charged in an indictment with conspiracy to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), conspiracy to import marijuana in violation of 21 U.S.C. § 952(a), and conspiracy to launder money in violation of 18 U.S.C. § 1956. *United States v. Garcia*, File No. 1:94-CR-190 (W.D. Mich.) (Crim. Dkt. No. 1, Indictment.)[1] A warrant for his arrest was issued the same day. On March 9, 1995, Movant was charged in a superseding indictment with the same three counts and an additional count

---

[1] Citations to "Crim. Dkt. No.___" refer to File No. 1:94-CR-190 (W.D. Mich.), and citations to "Civ. Dkt. No.___" refer to File No. 1:09-CV-344 (W.D. Mich.).

of engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. (Crim. Dkt. No. 159, Superseding Indictment.) When Movant learned of the investigation against him, he took up residence in Mexico in order to avoid arrest. Movant was arrested by Mexican authorities in 2003. After his efforts to contest extradition failed, Movant was brought to this district and arrested by the United States Marshals on October 24, 2005. (Crim. Dkt. 598, Warrant Return.)

A jury trial was conducted before this Court between April 10, 2006, and April 17, 2006. The jury found Movant guilty of conspiracy to distribute more than 1,000 kilograms of marijuana, engaging in a CCE, and conspiracy to launder money. The jury found him not guilty of conspiracy to import marijuana. (Crim. Dkt. No. 633, Verdict Form.) On July 18, 2006, Movant was sentenced to 240 months in prison on the CCE and money laundering conspiracy convictions. (Crim. Dkt. No. 641, J.) Because the marijuana conspiracy conviction was a lesser-included offense of the CCE conviction, sentencing on the marijuana conspiracy conviction was held in abeyance in the event the CCE conviction was overturned on appeal. (ST 3-4.)[2] Movant's convictions for CCE and conspiracy to commit money laundering and his sentence were affirmed on appeal. *United States v. Garcia*, No. 06-2016, 259 F. App'x 747 (6th Cir. Jan. 7, 2008). Movant's conviction for conspiracy to distribute marijuana was vacated on February 12, 2008. (Crim. Dkt. No. 666.)

---

[2] "ST" refers to the sentencing transcript found at Crim. Dkt. No. 658.

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *Peveler v. United States*, 269 F.3d 693, 699-700 (6th Cir. 2001). An ineffective

3

assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

A court is generally required to grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255. Section 2255 does not require a full-blown evidentiary hearing in every instance. "Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

**III.**

Movant seeks relief on three separate grounds. His first ground for relief, which is based on ineffective assistance of counsel, raises seventeen separate issues. Movant asserts that counsel was ineffective because he:

A. Compelled Movant to wear clearly identifiable prisoner clothing to trial;

B. Failed to investigate and familiarize himself with the facts of the case, failed to consult with Movant about his theory of the defense, and failed to ask Movant about presenting witnesses;

C. Failed to advise Movant that his tax returns would be admitted into evidence and used against him at trial;

D. Failed to explain that Movant could not be sentenced to life in prison if he accepted the plea agreement;

E. Failed to request an extension of time and/or mental evaluation when it was obvious that Defendant was not in good mental health and was taking medication;

F. Misrepresented that he was ready for trial and that he had visited Movant six times in the month before trial, when in fact he had visited Movant only twice and had not investigated any witnesses;

G. Failed to present a viable speedy trial defense;

H. Delivered the 2500 page discovery package thirty days before trial and failed to explain that 34 witnesses would testify against Movant at trial;

I. Advised the jury in his opening statement that Movant was guilty;

J. Failed to request special interrogatories on the conspiracy and continuing criminal enterprise counts;

K. Failed to request special interrogatories regarding the fifth element of the continuing criminal enterprise count;

5

L. Failed to object to prejudicial evidence that Movant had a child out of wedlock with another woman while he was married;

M. Presented no evidence or witnesses to refute the government's evidence;

N. Failed to file a motion for acquittal;

O. Stipulated to a jury instruction on flight without investigating or discussing the matter with Movant;

P. Took Movant to trial without witnesses and despite his knowledge that Movant could not testify because of his poor mental health and being on medication; and

Q. Failed to inform Movant that he had a right to address the Court at sentencing.

To make out a claim of ineffective assistance of counsel, Movant must show that counsel's representation fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the Defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*; *see also Johnson v. Mitchell*, 585 F.3d 923, 938 (6th Cir. 2009) ("[I]n reviewing a claim of

6

ineffective assistance of counsel, courts should decline second-guessing an attorney's trial strategy." ). To establish prejudice, Movant must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result. *Strickland*, 466 U.S. at 694.

Although Movant has presented a laundry list of complaints against his trial counsel, Movant's first and primary contention is that trial counsel was ineffective for compelling him to wear clearly identifiable prisoner clothing at trial. (Civ. Dkt. No. 1, 2255 Mot., Ground I, ¶ A.) This contention lacks merit. A defendant has a right not to stand trial before a jury while dressed in "identifiable prison clothes." *Estelle v. Williams*, 425 U.S. 501, 512-13 (1976). Contrary to Movant's contentions, the clothing he wore on the first three days of trial were not clearly identifiable to the jury as prison clothes. (TT-IV, 782-83; ST 16-20.)[3] The khaki slacks and khaki buttoned shirt with a collar had the appearance of a work uniform of the kind that might be worn by an air conditioner contractor. (ST 18-19.) Movant's attire only became an issue when one witness, David Hernandez, who was a federal prisoner, identified Movant as the person in "federal inmate clothes." (TT-III, 457.) Trial counsel did not object to that statement because he did not want to draw further attention to it. (TT-IV, 783.) After that statement, the Court, in an abundance of caution, directed counsel to obtain alternative civilian clothing for Movant. (TT-IV, 783; ST 17-19.)

---

[3]"TT-" refers to volumes I-VI of the trial transcript found at Crim. Dkt. Nos. 652-657.

7

Counsel's conduct with respect to Defendant's trial attire did not fall below an objective standard of reasonableness. Only a witness who was a federal prisoner recognized Defendant's attire as being federal prison clothing. Given the generic and respectable nature of Defendant's attire, it was reasonable for counsel to believe that no juror would have identified his attire as prison clothing. After witness Hernandez identified Defendant's attire as prison clothing, counsel obtained alternative attire for Movant for the remainder of the trial. Finally, Movant was not prejudiced by counsel's conduct in failing to object to his attire for the first three days of trial. There was substantial testimony on the record regarding Movant's incarceration prior to trial, so even if the jury was able to identify Movant's attire as prison clothing, it would not have provided any information they did not already have. (TT-IV, 783.)

The issue of second-most concern to Movant is counsel's failure to request an extension of time or a mental examination. Movant contends that it was obvious that he was not in good mental health, that he suffered from anxiety and high blood pressure, and that he was taking medication (30 mg of Paxil) for post-traumatic stress disorder. (2255 Mot., Ground I, ¶ E.) Movant contends that had he been given proper medical care, he would have been able to understand his situation better and would have accepted the government's plea agreement.

Movant has presented evidence that during his pretrial incarceration at the Newaygo County Jail he was diagnosed with anxiety, hypertension, difficulty hearing in his left ear,

8

pain in his left ear, an umbilical hernia, and dental pain. (Crim. Dkt. No. 1, Exs. 15-22.) The same records reflect that Movant was alert, oriented, and logical in his thinking and speech. (*Id.*) The Court paid close attention to Movant's at the pretrial conference and throughout the trial, and found that he paid close attention to the proceedings and expressed himself clearly, rationally, and appropriately during all court appearances. The Court made the following findings in conjunction with Movant's decision not to testify:

> There obviously appears to have been a traumatic event, whether it was episodal or whether it was of long standing, in conjunction with the arrest on this matter and the subsequent extradition proceedings before today, and it appears that whatever the trauma was has deleteriously affected Mr. Garcia. Having said that, it appears Mr. Garcia is clearly competent to continue in these proceedings, clearly understands the role and what is going on and has followed throughout this matter the various witnesses, the exhibits and other such matters with peculiar attention to them, as this Court can verify watching Mr. Garcia through this matter.

(TT-VI, 1009.) There is no evidence to support Movant's suggestion that he was not in a position to understand or act on counsel's representations regarding the government's plea offer. The Court concludes that counsel was not ineffective for failing to request an extension of time and/or a mental evaluation.

A common theme in Movant's various filings in support of his § 2255 motion is his contention that counsel failed to investigate the case and was unprepared for trial. (2255 Mot., Ground I, ¶¶ B, F, G, M, O, P.) Except as specifically addressed below, Movant does not specify the areas where counsel was unprepared, and simply bases his contention on counsel's failure to consult with Movant on a defense theory. Although there is a factual

9

dispute as to how many times counsel met with Movant in the month prior to trial,[4] there is no minimum number of visits that is essential to proper representation. The record demonstrates that counsel had sufficient discussions with Movant to enable him to present applicable defenses, primarily through the testimony of Movant's family members. Furthermore, counsel's understanding of the case came not only from his discussions with Movant, but also from his review of the voluminous discovery materials, which included transcripts from the prior trial involving Movant's co-defendants. (FPT 3-4.)[5] By virtue of the prior trial, counsel was in the unique position of having access to the government's theory of the case and the testimony of many of the witnesses who would testify against Movant. Therefore, the fact that Movant did not witness or participate in much of counsel's preparation is not evidence that counsel was unprepared. Moreover, Movant has not indicated what additional meetings between himself and trial counsel would have uncovered in the way of evidence, alibi witnesses, or contradictory testimony that would have altered the result of the proceedings. Movant has failed to show that counsel's investigation and preparedness fell below an objective standard of reasonableness.

Movant faults counsel for not calling any witnesses, but the only potential witness Movant has identified is Juanita Garcia. (2255 Mot., Ground I, ¶ B.) Movant contends that

---

[4]Movant contends counsel visited him twice at the jail, on March 10, 2006, and March 24, 2006. (2255 Mot., Ground I, ¶ D.) Counsel has advised that his records reflect at least five visits in March of 2006. (Boekeloo Aff., Ground I, ¶ D.)

[5]"FPT" refers to the Final Pretrial Conference Transcript found at Crim. Dkt. No. 651.

Jaunita Garcia sold her house to Sandra Leal, that she received some of the money orders, and that she could have testified regarding the level of Movant's involvement in the conspiracy and CCE counts. *Id.* Trial counsel asserts in his affidavit that Movant never mentioned any witnesses that he wanted to testify. (Boekeloo Aff. Ground I, ¶ B.) Although Movant filed an affidavit in response to his counsel's affidavit, he does not challenge counsel's representation that Movant never identified any witnesses he wanted to have testify on his behalf. (Dkt. No. 12, Def.'s Aff.)

Movant contends that but for counsel's failure to advise him that his income tax filings would be used against him, he would likely have accepted the plea agreement because he could not explain the additional income. Movant's contention cannot be accepted as true because it is contradicted by the record. As represented by counsel, and confirmed by Movant on the record, Movant was provided with copies of all of the government's discovery materials prior to trial. (Boekeloo Aff, Ground I, ¶ C; FPT 4.)

Movant contends that counsel failed to advise him that he would not be sentenced to life in prison if he entered a guilty plea. (2255 Mot., Ground I, ¶ D.) There is no question that counsel discussed the government's plea offer with Movant. Counsel stated that he did so in his affidavit, and Movant complained on the record that counsel "just speaks to me about signing a paper that's called a plea agreement." (Boekeloo Aff. Ground I , ¶ H; FPT 4.) Movant has not identified the source of his misconception as to the potential sentence associated with a plea, nor has he suggested that counsel was aware of his misconception.

11

Counsel was not ineffective for failing to correct a misconception that he did not create and did not even know about.

Movant complains that counsel was ineffective for failing to raise a speedy trial argument. (2255 Mot., Ground I, ¶ G.) The Sixth Amendment guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a speedy trial. *Doggett v. United States*, 505 U.S. 647, 651 (1992). In evaluating speedy trial claims, courts weigh the conduct of both the prosecution and the defendant, including: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice suffered by defendant as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). At trial, the government presented substantial evidence that the pre-trial delay was caused by Movant's flight to Mexico after the search of his home and his opposition to extradition. Steven Baker, a special agent with the Internal Revenue Service Criminal Investigation Division testified that they attempted to arrest Movant, and that they made inquiries and contacts with the Mexican authorities in order to have Movant arrested, but that Movant was not arrested in Mexico until 2003. (TT-I, at 79-80.) Movant has attempted to discredit Baker's testimony with evidence that he was arrested and released by Mexican authorities prior to 2003. (Dkt. No. 15.) This evidence does not contradict Baker's testimony. Movant has not come forward with any evidence to suggest that counsel could have shown that the government did not use reasonable diligence in pursuing him, or that he suffered actual prejudice as a result of the delay. *See United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999) ("[W]hen the

government has used reasonable diligence to pursue a defendant, the defendant must show that the delay caused 'actual prejudice' to his defense."). Movant has not shown that there was a viable speedy trial argument that could have been made. Counsel cannot be found to have performed deficiently based on his failure to raise arguments that have no merit. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *see also United States v. Cronic*, 466 U.S. 648, 657 (1984) ("If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade.").

Movant asserts that that had he known that thirty-four witnesses would testify against him, he would have accepted the government's plea agreement. (2255 Mot., Ground I, ¶ H.) Movant's assertion cannot be accepted as true because it is contradicted by the record. Movant had the voluminous trial transcript of the trial of his co-defendants, so he was well aware of not only the number, but also the identity and the testimony of many of the government's witnesses. In addition, he was aware that the government intended to call three of Movant's siblings to testify against him at trial. (FPT 15.) He also was present at the Final Pretrial Conference when the United States Attorney stated that she intended to call approximately forty-two witnesses at trial and that the government's outstanding plea offer was still open. (FPT 14-15.) In light of this evidence, Movant's assertion that he would have entered a plea had he known how many witnesses would testify against him is inherently incredible.

Contrary to Movant's assertions (2255 Mot., Ground I, ¶ I), counsel did not advise the jury in his opening statement that Movant was guilty. (TT-I, 75-77.)

Movant's contentions that counsel was ineffective for failing to request special interrogatories on the conspiracy and continuing criminal enterprise counts (2255 Mot. Ground I, ¶¶ J, K) lacks merit. The use of special interrogatories in criminal cases is not generally favored. *United States v. Escobar-Garcia*, 893 F.2d 124, 126 (6th Cir. 1990). The Sixth Circuit has recognized that exigent circumstances could arise that could justify the use of special interrogatories, *id.*, and special interrogatories have been deemed advisable in certain complex cases. *See United States v. Ogando*, 968 F.2d 146, 148-49 (2nd Cir. 1992). However, this case presented neither exigent circumstances nor the level of complexity that would have warranted the use of special interrogatories. Accordingly, counsel's failure to request special interrogatories did not fall below an objective standard of reasonableness and did not prejudice Movant.

Movant contends that counsel was ineffective for failing to object to the admission of prejudicial evidence that he had a child out of wedlock, while he was married to another woman. (Ground I, ¶ L.) Movant has not outlined where, in the record, such evidence was admitted. During its opening statement the government explained that Movant and Flor Flores were not married, but "they have a child together and have been in a long-term relationship since the 1990s, and many people call Flor Flores his wife." (TT-I, at 64.) This statement was not inherently prejudicial and was relevant for purposes of clarifying the

inconsistent trial references to Flor Flores as either Movant's wife or his girlfriend. (*See* TT-I, Leal at 260, 285 (identifying Flor as Movant's wife); TT-IV, V. Garcia at 779, 829 (identifying Flor as Movant's girlfriend, and then as his wife); TT-V, P. Garcia at 952 (identifying Flor as the person living together with Movant).) Counsel's failure to object to this reference did not fall below an objective standard of reasonableness and did not prejudice Movant.

Movant contends that counsel was ineffective for failing to file a motion for acquittal. (Ground I, ¶ N.) Rule 29 provides for entry of a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Sixth Circuit has already determined that the evidence was sufficient to submit the CCE count to the jury. *Garcia*, 259 F. App'x at 751. Movant failed to challenge the sufficiency of the evidence with respect to his money laundering conspiracy conviction on appeal, so this claim is procedurally defaulted, and Movant has not even attempted to show cause and prejudice or actual innocence to excuse the default.

Movant contends that counsel was ineffective for stipulating to the jury instruction on "flight." Movant has not shown that counsel was ineffective on this basis because Movant has not suggested any viable basis on which counsel could have challenged the instruction. The facts of record supported the instruction that was given.

Finally, Movant contends that counsel was ineffective for failing to inform him that he had a right to address the Court at sentencing. Movant contends that as a result of this

failure, Movant was unprepared for allocution and was not able to say everything he wanted to say.

Counsel denies Movant's assertions. In any event, the Court advised Movant when it was his turn to address the Court and clarified that he would not have an additional opportunity to address the Court at the conclusion of the sentence. (ST, 16.) Movant made one comment about his trial attire, then said that was all. (*Id.*) After a discussion about the trial attire, the Court gave him two more opportunities to add anything else. (ST 22.) To date, despite his numerous filings, Movant has not identified what else he wanted to say. Movant has failed to sustain his burden of showing that he was prejudiced by counsel's alleged failure to advise him of his right to allocution.

Upon review, the Court concludes that Movant has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. The motion and the files and records of the case conclusively show that Movant is entitled to no relief on his ineffective assistance of counsel claim.

## IV.

Movant describes his second ground for relief as "constructive denial of effective assistance of counsel." Movant contends that the Court, the prosecutor, and defense counsel violated his Sixth Amendment right to counsel by failing to take corrective action when it was obvious that Defendant was not competent to communicate with defense counsel or to understand the proceedings against him, and when the Court failed to investigate Movant's

16

complaints that defense counsel failed to visit him, had not prepared for trial, and had no trial strategy.

These arguments mirror Movant's arguments for ineffective assistance of counsel and lack merit for the same reasons described with respect to Movant's previous arguments.

## V.

As his third ground for relief, Movant contends that he was denied due process when the Court advised the jury that the Defendant's other family members were convicted in 1995 and that defense counsel did not know how to make an opening statement. (2255 Mot., Ground III.)

Prior to voir dire the Court gave the jury panel a brief introduction to the case. (TT-I, 13-15.) The Court mentioned the prior trial to enable the jurors to understand references that would inevitably be made during trial to these historic events. (*Id.*) The Court simultaneously cautioned the jury that Movant was presumed innocent, that the age of the charges should not be held against him, and that the results of the prior trial were irrelevant to the jury's purposes. (*Id.* at 14-15.) Giving the jurors a background to what would inevitably be introduced at trial did not deny Movant his right to due process.

Defendant was also not denied due process by the Court's remarks to defense counsel that his opening statement was more in the form of an argument rather than a statement of what he expected the evidence to disclose. (TT-I, 101.) These remarks were made outside the presence of the jury. Accordingly, contrary to Movant's assertions, the remarks could not have led the jury to believe that his attorney did not know what he was talking about.

## VI.

The files and records in this case conclusively show that Movant is entitled to no relief under § 2255. Accordingly, for the reasons stated herein, Movant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 must be denied.

An application for a certificate of appealability will also be denied because Movant cannot make a substantial showing of the denial of a federal constitutional right with respect to any of his claims. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

An order and judgment consistent with this opinion will be entered.


Dated: May 6, 2010                               /s/ Robert Holmes Bell
                                                                   ROBERT HOLMES BELL
                                                                   UNITED STATES DISTRICT JUDGE